IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

```
MONICA DECKER,                    )
                                  )
      Plaintiff,                  )
                                  )
vs.                               )    NO. 2:04-CV-227
                                  )
JAMES TINNEL, individually        )
and as police officer of the      )
Town of Hebron, Indiana,          )
et al.,                           )
                                  )
      Defendants.                 )
```

## OPINION AND ORDER

This matter is before the Court on the (1) Motion for Summary Judgment, filed by Defendant, James Tinnel, on September 8, 2005; and (2) Motion for Summary Judgment, filed by Defendants, Town of Hebron and Frank Midkiff, on September 8, 2005. For the reasons set forth below, Officer Tinnel's Motion for Summary Judgment is **GRANTED**. The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's claims against Officer Tinnel under 42 U.S.C. section 1983 (Count I), and the Clerk is **ORDERED** to **DISMISS WITHOUT PREJUDICE** Plaintiff's state law claims against Officer Tinnel (Counts II-IV). The Town of Hebron and Frank Midkiff's Motion for Summary Judgment is also **GRANTED**. The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's 1983 claims against Defendants, the Town of Hebron, the Town of Hebron Police Department,

and Frank Midkiff (Count I), and the Clerk is **ORDERED** to **DISMISS WITHOUT PREJUDICE** Plaintiff's state law claims against Defendant, the Town of Hebron Police Department (Count V).  Furthermore, the Clerk is **ORDERED** to close this case.

BACKGROUND

Factual Background Related to Tinnel's Motion
for Summary Judgment

On July 29, 2003, the 18-year-old Plaintiff, Monica Decker, went on a police ride-along with Hebron Police Officer, James Tinnel. Decker went on the ride-along because she was considering a career in law enforcement.  The incident at issue occurred the third time Decker participated in the ride-along program, but on the first and only time Decker rode with Officer Tinnel.

The ride-along at issue started at approximately 7:00 p.m.  When Decker arrived at the police station, Officer Tinnel was present in his full police uniform, and he was carrying a gun.  Officer Tinnel contends that during the ride-along, Decker flirted with him, but Decker denies this allegation.  At the time, Decker was five feet six inches tall and weighed approximately 135 pounds.  (Decker Dep., pp. 26, 224.)  Officer Tinnel was 29-years old, six foot two inches tall, and weighed 275 pounds. (Tinnel Dep., pp. 2-3.)  It is uncontroverted that about 40 minutes into the ride, Officer Tinnel turned the conversation to a sexual nature.  (Decker Dep., p. 294.)   Tinnel

repeatedly asked Decker if she was eighteen, and asked Decker if she would strip for him (to which Decker replied "no"). (*Id.*, pp. 298, 86.)

Officer Tinnel then drove to a bridge to run radar detection. (*Id.*, p. 87.) Officer Tinnel told Decker she could press the radar button, and when she was not looking, Officer Tinnel leaned over and pushed his face against Decker and tried to kiss her. (*Id.*, pp. 87, 90, 301-02.) Although Officer Tinnel believed the kiss was mutual, Decker claims the kiss was not consensual. (*Id.*, p. 302.) According to Decker, Tinnel tried to "stick[] his tongue down [her] throat," but she kept her mouth closed, and pushed Tinnel away. (*Id.*, pp. 87-88.) The exchange lasted less than five seconds. (*Id.*, p. 88.)

Decker maintains that after the kiss, Tinnel forced his hand between her closed thighs, coming within an inch of her vagina. (Decker Dep., pp. 88-89, 93, 117, 304-305.) Decker yelled "no," and Officer Tinnel stopped. (*Id.*, p. 89.) The entire exchange lasted less than ten seconds. (*Id.*, p. 93.) Tinnel denies this physical contact. (Tinnel Dep., p. 208.)

Officer Tinnel then drove to another location, a cul-de-sac in Hebron, and parked behind a stop sign. (Decker Dep., pp. 96-97.) According to Decker, Officer Tinnel leaned over and tried to push his tongue down Decker's throat again. (*Id.*, p. 97.) Decker claims Tinnel's lips touched hers for no more than a second before she stopped him. (*Id.*, p. 97.) However, Tinnel maintains that he asked

Decker if she would kiss him, she said yes, and then leaned over and kissed him.  (Tinnel Dep., 206.)  Decker contends she yelled "no," then Officer Tinnel grabbed her chest, placing his whole hand over her two breasts.  (Decker Dep., pp. 97-98.)  The touching was over her t-shirt and lasted approximately two seconds.  (*Id.*, p., pp. 98-99.) Tinnel, on the other hand, maintains that while they were kissing, her breast rested on his hand.  (Tinnel Dep., pp. 206-07.)  When Decker yelled "no," Officer Tinnel stopped, and removed his hand.  (Decker Dep., p. 106.)

Decker then asked Officer Tinnel to drive her home.  (*Id.*) Tinnel agreed, and they arrived at the police station within two to three minutes following her request.  (Decker Dep., p. 108.)

Decker filed an amended complaint on December 7, 2004, alleging the following causes of action against Officer Tinnel:  violation of her rights under the Fourth, Eighth and Fourteenth Amendments under 42 U.S.C. section 1983 (Count I); false imprisonment (Count II); assault and battery (Count III), and intentional infliction of emotional distress (Count IV).

Officer Tinnel filed the instant motion for summary judgment, making the following arguments:  (1) he is entitled to summary judgment on Plaintiff's Fourth Amendment claims of false imprisonment because Decker was never placed under arrest; (2) Plaintiff's equal protection claim fails because she cannot demonstrate she was subjected to differential treatment or that the conduct at issue was

the product of a totally illegitimate animus; (3) he is entitled to summary judgment on Decker's substantive due process claims because his conduct does not shock the conscience; (4) Decker's section 1983 claim fails because Tinnel is entitled to qualified immunity; (5) Decker's state law claims for assault and battery and intentional infliction of emotional distress fail because Tinnel is immune and because his conduct was not extreme or outrageous.  Decker contends that summary judgment is inappropriate because there are genuine issues of facts and Officer Tinnel is not entitled to immunity.

Factual Background Related to the Town of Hebron
and Frank Midkiff's Motion for Summary Judgment

The incident at issue occurred on Decker's third ride-along with the Hebron Police Department - she accompanied Officer Tommy Horton, without incident, on her first two ride-alongs.  Prior to Decker's complaint, no similar complaints had ever arisen from the Hebron Police Department ride-along program.  (Frank Midkiff Aff., ¶ 4; Thomas Horton Dep., pp. 44, 104.)  No previous complaints had been made to Frank Midkiff, Chief of the Hebron Police Department, regarding any similar conduct by Tinnel.  (Midkiff Aff., ¶ 5.)  In fact, there had been no previous complaints of any similar conduct by any Hebron police officer.  (Midkiff Aff., ¶ 6; Guthrie Dep., pp. 22, 36.)  While he served as Chief of the Hebron Police Department, Midkiff did not receive any complaints that officers in his department engaged in conduct which objectified, degraded, humiliated, or

-5-

disrespected women.   (Midkiff Aff., ¶ 21; *see also* Horton Dep., pp. 44, 101, 104, 249.)

Upon receipt of Decker's complaint, the Town of Hebron suspended the ride-along program, Chief Midkiff interviewed Tinnel and Decker, Chief Midkiff suspended Tinnel for three days without pay, and Officer Tinnel apologized to Decker and her father.   At the time of the incident, the Town of Hebron Police Department had a sexual harassment policy in place, and the officers had been trained on the policy. (Midkiff Aff., ¶¶ 19, 20.)

Tinnel attended training at the Porter County Reserve Academy and the Police Academy.   (Tinnel Dep., pp. 9, 39-40.)   In all of his prior positions, Tinnel had never been disciplined for similar alleged misconduct.   (Tinnel Dep., pp. 15, 21, 22.)

Decker alleges that the Hebron Police Department was a sexually charged atmosphere.   Steve Sibbrell was second in command under Chief Midkiff.   (Horton Dep., p. 34.)   Decker claims that Steve Sibbrell had bestiality videos on his computer that he showed to the men in the police department, and he asked women if they would like to view pornographic videos.   (Horton Dep., pp. 237-38.)   Sibbrell allegedly bragged to others about sexual conquests, and Tinnel allegedly told Horton that he had sex with a waitress on top of his squad car while on duty.   (Horton Dep., p. 103.)   Tinnel also boasted that while attending Northwest Indiana Law Enforcement Academy, he stood up in class, pulled out his "privates," shook them at his female instructor,

and then sat down.   (Horton Dep., pp. 235-36.)   According to Officer Horton, "[t]hat whole place was sexual.   You had to really   watch yourself around there."   (Horton Dep., p. 257.)

In her amended complaint, Decker alleges that the Town of Hebron, the Town of Hebron Police Department, and Chief Midkiff violated her rights under section 1983 by failing to train Tinnel, failing to respond to the incident, and having "a widespread practice and policy of tolerating conduct by its police officers which included committing sexual assault, battery and confinement that was so permanent and well settled as to become a custom or usage." (Count I, ¶ 18.)   Decker also alleges a state claim for negligent hiring and training (Count V). In their motion for summary judgment, as to the federal claims, Defendants argue that there is no evidence which establishes a genuine issue of material fact as to the training of Officer Tinnel, that there is no express policy which led to a violation of Decker's constitutional rights, and that Defendants did respond to Decker's claim of sexual harassment.


DISCUSSION

The standards that generally govern summary judgment motions are familiar.   Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   *See Nebraska v.*

*Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In other words, the record must reveal that no reasonable jury could find for the nonmovant.  *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant.  *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).  "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.  In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

To state a claim under section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *see also Cunningham v. Southlake Ctr. for Mental Health*, 924 F.2d 106, 107 (7th Cir. 1991).  The preliminary step in any section 1983 claim is to determine which of Plaintiff's substantive constitutional rights were allegedly violated.  *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997).

Plaintiff's Section 1983 Claim Against
Officer Tinnel, Individually

    Fourth Amendment Claim

It her amended complaint, Plaintiff alleges she was subjected to an unreasonable seizure in violation of her Fourth Amendment rights. Officer Tinnel argues he is entitled to summary judgment on this claim because "[i]n order to prevail on a Fourth Amendment false imprisonment claim, Decker must establish that Tinnel arrested her without probable cause." (Tinnel's Mem. in Supp. of Summ. J., p. 6.) Because no arrest occurred, reasons Tinnel, he is entitled to summary judgment.  In support of this argument, Tinnel cites *Morfin v. City of East Chicago*, 349 F.3d 989, 997 (7th Cir. 2003).  That case held that "[i]t is well settled that the actual existence of probable cause to arrest precludes a section 1983 suit for false arrest."  *Id.* (citations omitted).  However, it does not state that in order to maintain any claim for an unreasonable seizure, an arrest must have occurred.

Tinnel also contends that, applying the appropriate test, Decker's claim fails because a reasonable person would have felt free to terminate the encounter based on the totality of the circumstances. Both parties agree that the appropriate standard is set forth in *Florida v. Bostick*, 501 U.S. 429, 436 (1991).  That case stated that when an individual's "freedom of movement was restricted by a factor

-10-

independent of police conduct [in this case, the police car] . . . the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Bostrick* involved a plaintiff who was confronted and questioned by officers while on a bus. *Id.* at 431-32. This is a different situation because Decker voluntarily entered Tinnel's police car, was never questioned by him, and was not suspected of any unlawful activity. However, because both parties contend this is the proper standard, the Court will address the arguments.

*Bostick* held that to determine whether a particular encounter constituted a seizure, the Court should consider all of the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officer's request or otherwise terminate the encounter. *Id.* at 439. Tinnel argues that a reasonable person would have felt free to terminate the encounter under the circumstances. Decker did not know whether the passenger side car door was locked or unlocked. (Decker Dep., p. 94.) Additionally, when Decker asked to be taken back to the police station, Tinnel immediately honored her request and she was back at the station within five minutes.

Decker points out that the encounter took place in a police car, at night, parked in a secluded area, with Tinnel wearing an officer's uniform and a gun. When Decker was asked why she did not leave

-11-

earlier in the encounter, she responded, "[b]ecause he's a big guy – Tinnel is a big guy, and he has a gun.  And I was afraid he was going to chase after me.  I didn't know what he was going to do, so." (Decker Dep., p. 184.)

Upon due consideration, this Court believes an objectively reasonable person would have believed she could have terminated the encounter.  There is no evidence in the record that Officer Tinnel verbally threatened Decker, or that he warned her not to leave the police car.  There is no evidence that he used force or violence to keep her in the police car, or threatened to use his gun.  Officer Tinnel did not brandish his weapon, nor did he physically restrain Decker or prevent her from leaving the vehicle.  Although Decker was undoubtedly scared, she successfully resisted Tinnel's kisses and touching, yelling "no," and pushing him away.  Decker has provided no evidence that Tinnel's conduct communicated to her that she was not free to decline his requests, or to otherwise terminate the encounter. Most importantly, when Decker asked Tinnel to take her to the police station so that she could go home, he immediately complied and returned her to the station.   Thus, upon her request, Decker did successfully terminate the encounter.

Taking the facts in the light most favorable to Decker, as this Court must, the Court believes that, although Tinnel's actions were deplorable and utterly inappropriate, under the circumstances, a reasonable person would have felt free to terminate the encounter.

And Decker did, in fact, terminate the encounter at her first verbal request. Consequently, Officer Tinnel is entitled to summary judgment on Plaintiff's Section 1983 claim to the extent it arises under the Fourth Amendment for an unreasonable seizure.

### Equal Protection Rights Under the Fourteenth Amendment

Plaintiff alleges that Tinnel deprived her of her Fourteenth Amendment rights.[1]  Although it is unclear from the face of the complaint, the Court interprets her claim as a deprivation of equal protection rights.  Tinnel argues that Decker's "class of one" claim fails because she has not alleged she was treated differently from others who are similarly situated, and that a totally illegitimate animus is the reason behind the differential treatment.  Decker fails to respond to this argument.

Assuming Decker has not waived this argument by failing to respond, the claim still fails.  To succeed on a "class of one" equal protection claim, Decker "must demonstrate that [the defendant] is treating unequally those individuals who are prima facie identical in all relevant respects, and that the cause of the differential treatment is a totally illegitimate animus toward the plaintiff by the defendant." *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir.

---

[1]As noted by Officer Tinnel, the complaint also purports to state a violation of Decker's Eighth Amendment rights.  However, because the Eighth Amendment protects the rights of convicted prisoners, it is inapplicable to Decker.

2001) (citations and quotations omitted).  This is difficult to prove because "[i]ll will must be the sole cause of the complained-of action.  A showing of uneven law enforcement standing alone, will not suffice." *Id*.  (quotations and citations omitted).

Decker has failed to put forth any evidence of an individual who was treated differently than she was by Officer Tinnel. *See McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004) (finding it necessary that the plaintiff identify someone who is similarly situated, but intentionally treated differently).  In fact, she points to no other individual that participated in the police ride-along program.  Also, there is no evidence that Officer Tinnel purposefully treated Decker differently or discriminated against her, or acted out an illegitimate animus.  In fact, there is no evidence that establishes that Tinnel and Decker had a previous relationship of any kind.  Therefore, to the extent Decker maintains a claim of violation of her equal protection rights, summary judgment is warranted in favor of Officer Tinnel.


Fourteenth Amendment Claim for Violation
of Substantive Due Process

The Due Process Clause provides that the Government cannot "deprive any person of life, liberty or property, without due process of law." U.S. Const. Amend. XIV.  Decker's claim is premised on the alleged violation of a constitutionally protected liberty interest, within the meaning of the Fourteenth Amendment, in her personal bodily

-14-

integrity.  *See Ingraham v. Wright*, 430 U.S. 651 (1977); *Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir. 1997)(finding a "liberty claim of a right to bodily integrity is . . . within substantive due process."); *White v. Rochford*, 592 F.2d 381, 383 (7th Cir. 1979) (finding a right to some degree of bodily integrity is protected by the due process clause).

A plaintiff may invoke section 1983 regardless of whether a state tort remedy might be available to compensate her for the deprivation of those rights.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). However, "[t]his does not mean, of course, that all state torts can be transformed into § 1983 claims; the Supreme Court has repeatedly held that the opposite is true."  *Wudtke*, 128 F.3d at 1062 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992); *Baker v. McCollan*, 443 U.S. 137, 144 (1979); *Monroe v. Pape*, 365 U.S. 167, 196 (1961) (Harlan, J., concurring) ("[A] deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right.")); *see also Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1257 (10th Cir. 1996) ("A substantive due process violation must be something more than an ordinary tort to be actionable under § 1983.").

The standard for judging a substantive due process claim is whether the challenged action would "shock the conscience of federal

judges." *Tonkovich v. Kansas Bd. of Regents*, 150 F.3d 504, 528 (10th Cir. 1998) (citation and quotation omitted).   To satisfy this standard, a plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id. (citing Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995)).

Not all unwanted touching by a public official amounts to a violation of an individual's bodily integrity sufficient to support a constitutional violation. *Alexander v. DeAngelo*, 329 F.3d 912, 916 (7th Cir. 2003); *Hawkins v. Holloway*, 316 F.3d 777, (8th Cir. 2003)("[n]ot every inappropriate or unwanted touching by a public official . . . can amount to the 'brutal and inhumane abuse of official power' necessary to demonstrate a violation of an individual's bodily integrity sufficient to support a constitutional violation.") (quoting *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002)).   As the Seventh Circuit has stated, the liberty of bodily integrity protected by the Fourteenth Amendment:

> is infringed by a serious, as distinct from a nominal or trivial, battery.  The qualification is important.  Because any offensive touching (unless consented to, which removes the offense) is a battery, most batteries are too trivial to amount to deprivations of liberty.

*Alexander*, 329 F.3d at 916 (citations omitted).

Touching that amounts to a "serious" sexual assault implicates the substantive due process liberty interest in bodily integrity. *See Wudtke v. Davel*, 128 F.3d 1057, 1063 (7th Cir. 1997) (allegation of

-16-

coercion to perform oral sex stated substantive due process claim); *Alexander*, 329 F.3d at 916 ("rape committed under color of state law is [] actionable under 42 U.S.C. § 1983" as a due process violation). In *Wudtke*, the Seventh Circuit found that "the serious physical assault" alleged in the plaintiff's complaint (including forcible touching of the plaintiff's breasts and coercion to engage in oral sex on multiple occasions), stated a claim that rose to the level of a constitutional tort. *Wudtke*, 128 F.3d at 1063. However, the Court stated that it "need not decide how much less than that would also be cognizable under § 1983." *Id.*

Both parties cite to *Hawkins* in support of their arguments. Tinnel points to the fact that the court granted summary judgment for all of the defendants except one in *Hawkins*, finding that the defendant's sheriff's actions, *inter alia*, grabbing a plaintiff's clothed crotch area, touching his genitals, making vulgar sexual remarks, pinching or jamming his thumb into a plaintiff's clothed buttocks, sucking on a plaintiff's ear, repeatedly asking plaintiffs if they wanted to see the sheriff's "pee-pee," touching some plaintiffs' genitalia through their clothing, and unzipping his pants and placing one plaintiff's paycheck in them, suggesting the plaintiff should perform a sex act if he wanted his paycheck, all constituted inappropriate sexual contact, however, because the conduct "pale[d] in comparison" to actions such as rape, the Court entered summary judgment based on qualified immunity on those claims. *Hawkins*, 316

F.3d at 781-85.

On the other hand, Decker points to the one plaintiff in *Hawkins*, Ms. Springer, who the Court found "the sheriff's allegedly repeated intentional touching of her breasts to constitute a violation of her bodily integrity sufficient to support a substantive due process claim." *Hawkins*, 316 F.3d at 785.   Springer alleged the sheriff grabbed her breasts on several occasions, often picked up her beverage, placed it near his crotch, and asked Springer if she wanted him to fill it up, and Springer was present when the sheriff pulled his weapon on others, and she feared for her safety during the incidents.   *Id.* at 782.   The main differences between the surviving allegations in *Hawkins* and in this case is that in *Hawkins*, Springer alleged the sheriff grabbed her breasts on multiple occasions (here, Decker alleged one isolated touch), over an extended period of time (here, all of the alleged actions occurred during the one ride-along), and that she feared for her safety because the sheriff had drawn his weapon on others (here, Officer Tinnel did not draw his weapon). There is no allegation in this case that the touching was prolonged, or that it was coupled with force.   This Court believes these facts distinguish this case from *Hawkins*, and that Tinnel's actions do not rise to the level of a constitutional violation.

Having reviewed the cases cited by the parties, and those cited in *Hawkins*, this Court is further convinced that Officer Tinnel's actions do not support a claim under section 1983 for violation of

substantive due process. *Compare Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (holding teacher's rubbing of student's stomach while he made suggestive remarks did not violate student's right to bodily integrity); *Petrone v. Cleveland State Univ.*, 993 F. Supp. 1119, 1126 (N.D. Ohio 1998) (holding allegations of supervisor's sexual advances, including where supervisor slid his hand along a woman's leg toward her pelvic area, did not state a substantive due process claim), *disapproved of on other grounds in Kovacevich v. Kent State Univ.*, 224 F.3d 806 (6th Cir. 2000); *Anderson v. Cornejo*, No. 97 C 7556, 1999 WL 35307, *5 (N.D. Ill. Jan. 11, 1999) (dismissing section 1983 claim alleging improper and invasive airport pat-down searches); *with Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997) (recognizing officer's forcible rape violated woman's substantive due process rights); *Bennett v. Pippin*, 74 F.3d 578, 589 (5th Cir. 1996) (finding sheriff's rape of murder suspect violated right to bodily integrity); *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 727 (3d Cir. 1989) (holding allegations that teacher coerced student into performing sex acts were sufficient to constitute an intrusion into child's bodily integrity).

Key facts the Court considered in reaching its conclusion that Decker's claim does not rise to the level of a deprivation of due process are the following. First, the offensive behavior occurred within a relatively short period of time, during the one ride-along. Second, each touching or kissing incident lasted only a matter of

-19-

seconds, and concluded when Decker either pushed Tinnel away, or told him "no."  Third, other than Decker's testimony that the touching and kissing was unwanted, there is no evidence that Officer Tinnel used force (for example, he did not physically pin down Decker, threaten her with force, or take out his gun).  Fourth, although improper and depraved, the touching at issue does not rise to the level of egregious physical assaults present in some of the aforementioned cases that involved forcible rapes or other serious sexual molestations.

Although improper and reprehensible, Tinnel's conduct does not rise to the level of a constitutional violation.  "Many harms, though caused by a state actor, do not fall within the scope of section 1983, for section 1983 does not turn the Fourteenth Amendment into a font of tort law that supersedes the tort systems already available under individual state laws."  *Gregory v. City of Rogers*, 974 F.2d 1006, 1009 (8th Cir. 1992) (quotations omitted) (affirming grant of summary judgment to defendants where police officer had rubbed claimant's back and stared at her chest).  This Court agrees with the comment in *Hawkins* that "[i]t is a sad commentary on the state of our society" that allegations such as these "simply do not amount to behavior that the Constitution prohibits under the rubric of contemporary conscience shocking substantive due process."  *Hawkins*, 316 F.3d at 785-86.

Here, Decker must look to state law for a remedy.[2]


Plaintiff's State Law Claims Against Officer Tinnel

Plaintiff's remaining claims for false imprisonment (Count II), assault and battery (Count III), and intentional infliction of emotional distress (Count IV), are tort claims under Indiana state law.  Upon due consideration, the state law claims are **DISMISSED WITHOUT PREJUDICE** because the federal claims have been dismissed prior to trial.  28 U.S.C. § 1367(c); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").


Plaintiff's Section 1983 Claims Against The Town of Hebron, The Town of Hebron Police Department, and Frank Midkiff

Failure to Train

The parties agree that in order to prevail on a failure to train claim, Plaintiff must establish:  (1) that the plaintiff's constitutional rights were violated; (2) that the governmental entity responsible had a policy or custom of failing to train its employees; and (3) that the failure to train caused the constitutional violation.

---

[2]Because the Court has found that no constitutional violation occurred, it will not analyze the parties' arguments relating to immunity.

*Roach v. City of Evansville*, 111 F.3d 544, 549 (7th Cir. 1997).  This Court has already found that Decker's constitutional rights were not violated.  Even assuming, *arguendo*, that a constitutional right was violated, Plaintiff has not established the second or third prongs of the requisite test; therefore, Decker's failure to train claim under section 1983 fails.

In *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court established that a municipality may, in limited circumstances, be held liable under section 1983 for constitutional violations resulting from its failure to train police officers.  *Id.* at 387.  But the circumstances are limited:

> The inadequacy of police training may serve as a basis for § 1093 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury. . . . To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983.

*City of Canton*, 489 U.S. at 388, 391.  The Supreme Court elucidated this standard as follows:

> Only where a failure to train reflects a "deliberate: or "conscious" choice by a municipality – a "policy" as defined by our prior cases - can a city be liable for such a failure under § 1983.  Monell's rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which

> the city is responsible . . . [I]t may happen
> that in light of the duties assigned to specific
> officers or employees the need for more or
> different training is so obvious, and the
> inadequacy so likely to result in the violation
> of constitutional rights, that the policymakers
> of the city can reasonably be said to have been
> deliberately indifferent to the need.  In that
> event, the failure to provide proper training may
> fairly be said to represent a policy for which
> the city is responsible, and for which the city
> may be held liable if it causes injury.

*Id.* at 389-90.  In *Cornfield By Lewis v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316, 1327(7th Cir 1993), the Seventh Circuit added that:

> In order to ensure that isolated instances of
> misconduct are not attributable to a generally
> adequate policy or training program, we require
> a high degree of culpability on the part of the
> policymaker.   Coupled  with  a  causation
> requirement, this standard ensures that the
> violation alleged is not too far removed from the
> policy or training challenged as inadequate.
> Taken together, these two considerations amount
> to a requirement that liability be based on a
> finding that the policymakers have actual or
> constructive notice that a particular omission
> that is likely to result in constitutional
> violations.

991 F.2d at 1327.

Decker essentially argues that given the sexually charged atmosphere present in the Hebron Police Department, and the fact that Tinnel was a member of a department that allowed the viewing of pornography at work, his training must have been inadequate, and the deliberate indifference that Chief Midkiff and the Town of Hebron showed in addressing the situation could easily be found to be the

cause of Tinnel's violation of Decker's rights.  These allegations fail to satisfy this rigorous standard for a failure to train claim.

As pointed out by Defendants, there is no evidence to support the conclusion that it was obvious that there was an existing inadequacy in the training program at the Hebron Police Department.  It is uncontroverted that there had been no complaints of similar misconduct by any Hebron police officer, and no reports or complaints were ever made to Chief Midkiff of any similar misconduct by Officer Tinnel.

Additionally, there is no evidence to show that the Town of Hebron or the Hebron Police Department was deliberately indifferent to any need for better training.  Officer Tinnel completed the standard training sessions, and there was a sexual harassment policy in place at the time of the incident.  Because there had been no similar previous complaints about other officers or Officer Tinnel, it cannot be said that Defendants intentionally allowed sexual misconduct to occur, or that they acted in a deliberately indifferent manner.  Even assuming Chief Midkiff was aware of the atmosphere at the police department (an atmosphere which the Court does not condone, but which is not necessarily indicative of any tendency on the part of the police officers to sexually abuse civilians), Plaintiff has failed to prove a causal link between that environment and the actions taken by Officer Tinnel during the ride-along.  As such, Defendants are entitled to judgment as a matter of law on the failure to train aspect of Decker's section 1983 claim.

-24-

Express Policy That Led to a Violation of
Plaintiff's Constitutional Rights

Decker alleges that the Town of Hebron "had a widespread practice
and policy of tolerating conduct by its police officers which included
committing sexual assault, battery and confinement that was so
permanent and well settled as to become custom and usage."   (Am.
Compl. ¶ 18.)   Decker claims that Chief Midkiff and the Town of Hebron
were deliberately indifferent to actions of the police department in
fostering an atmosphere that objectified, degraded, humiliated, and
disrespected female civilians, and that objectifying and degradation
of women was the moving force behind the violations of Decker's
constitutional right to be free of sexual molestation and battery.[3]
Assuming, *arguendo*, that this Court found a constitutional violation
occurred, Decker's claim still fails.

A government entity cannot be held vicariously liable under
section 1983 for the acts of its employees.   *Monell v. Dep't of Soc.
Servs. of City of New York,* 436 U.S. 658, 694 (1978); *Jett v. Dallas
Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989).   In order for a

---

[3]The official capacity claim against Midkiff, as Chief of
Police, "is treated as a suit against the entity for which the
official capacity defendant is an agent."   *McNeal v. Cook County
Sheriff's Dep't*, 282 F. Supp. 2d 865, 868 (N.D. Ill. 2003)
(citation omitted).   Plaintiff's official capacity claim against
Midkiff is therefore treated as a claim against the Town of
Hebron Police Department.   Additionally, Decker's claims against
the Police Department are construed as claims against the Town of
Hebron.   *See West v. Waymire*, 114 F.3d 646, 646-47 (7th Cir.
1997) (finding the naming of a town's police department in a
section 1983 suit adds nothing because it is "not a suable entity
separate from the [t]own.").

municipality to be held liable under section 1983, the municipality must have adopted a "policy or custom" that deprived the plaintiff of her constitutional rights. *Bennett v. Roberts*, 295 F.3d 687, 699 (7th Cir. 2002) (citing *Monell*, 436 U.S. at 694).

In order to demonstrate that a municipal policy has violated her civil rights under section 1983, Plaintiff must show that:

> (1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority.

*McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000) (citation omitted); *see also McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). Further, a municipality may only be liable under section 1983 if it is the "moving force behind the injury." *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 405 (1997).

Decker proceeds under the second prong, arguing that the police department had a widespread policy so well settled that it constituted a custom or usage. However, Decker has pointed to no evidence in the record to make the leap from a sexually charged atmosphere to a department policy of condoning sexual harassment during ride-alongs, or encouraging or condoning sexual assault or battery of civilians while on duty. Decker herself admitted during her deposition that she

had no knowledge that the Town of Hebron had a widespread practice of tolerating conduct that included unwanted touching, confinement of civilians, or sexual assault. (Decker Dep., pp. 363-64.) Moreover, there is simply no evidence before the Court showing that the atmosphere described actually had an effect on Tinnel's conduct, or was the moving force behind his actions. Upon learning of Decker's complaint, an investigation ensued and Tinnel was reprimanded. Thus, even the handling of the complaint at issue supports the opposite conclusion - that there was no policy tolerating police conduct such as sexual assault.

Failure to Respond

Defendants contend there is no genuine issue of material fact regarding Decker's claim for a failure to respond to her complaint. Decker has failed to respond to this argument in her response. Arguments not presented to the district court in response to summary judgment motions are waived. *See Laborers' Int'l Union of North America v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999). Furthermore, the Court notes that Defendants could only be liable if they knew or should have known about the misconduct and failed to take appropriate corrective action. *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 432 (7th Cir. 1995). In this case, Defendants did take action. The ride-along program was suspended, investigation was conducted, and Tinnel was suspended for three days without pay. Therefore, even if

Decker has not waived her failure to respond claim, summary judgment is warranted on the merits.

Plaintiff's State Law Claim Against The Town
of Hebron Police Department

Plaintiff's remaining claim for negligent hiring and training of Officer Tinnel (Count V)is a state law claim.  Upon due consideration, the state law claim is **DISMISSED WITHOUT PREJUDICE** because the federal claims have been dismissed prior to trial.   28 U.S.C. § 1367(c); *Groce*, 193 F.3d at 501.

CONCLUSION

For the reasons set forth below, Officer Tinnel's Motion for Summary Judgment is **GRANTED.**   The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's claims against Officer Tinnel under 42 U.S.C. section 1983 (Count I), and the Clerk is **ORDERED** to **DISMISS WITHOUT PREJUDICE** Plaintiff's state law claims against Officer Tinnel (Counts II-IV).  The Town of Hebron and Frank Midkiff's Motion for Summary Judgment is also **GRANTED.**   The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's 1983 claims against Defendants, the Town of Hebron, the Town of Hebron Police Department, and Frank Midkiff (Count I), and the Clerk is **ORDERED** to **DISMISS WITHOUT PREJUDICE** Plaintiff's state law claims against Defendant, the Town of Hebron

Police Department (Count V).  Furthermore, the Clerk is **ORDERED** to close this case.


DATED:  December 20, 2005          /s/RUDY LOZANO, Judge
                                   **United States District Court**